**UNITED STATES DISTRICT COURT**
**IN THE SOUTHERN DISTRICT OF TEXAS**
**CORPUS CHRISTI DIVISION**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | § | |
| | § | |
| v. | § | **CRIMINAL NO. C-06-594** |
| | § | |
| **CHRISTOBAL PALOMINO** | § | |

**MEMORANDUM OPINION AND ORDER**
**DENYING DEFENDANT'S MOTION TO SUPPRESS**

On November 16, 2006, the Court heard Defendant's Motion to Suppress Evidence (D.E. 17). After considering the pleadings on file, the evidence presented and arguments of counsel, the Court finds Defendant's Motion to Suppress Evidence should be DENIED.

**I.  Statement of Facts**

On July 26, 2006, Texas Department of Public Safety Trooper Ramey Saenz and Narcotics Sergeant Ronald Saenz were patrolling US 77 in Kleberg County when they saw Defendant swerve from the center stripe to the shoulder lane stripe. Out of concern that Defendant may have been drinking, Trooper Saenz initiated a traffic stop at approximately 2:59 p.m.

Defendant pulled to the side of the road, and Trooper Saenz asked him to exit the vehicle. Trooper Saenz began questioning Defendant about the nature of his trip and employment and asked for his driver's license and insurance papers. Trooper Saenz testified Defendant's hand was shaking when he presented his license to the officer, and the address on his license was incorrect. Defendant told him he was traveling to San Antonio to visit his

1

children.  Defendant told Trooper Saenz that he was a mechanic, and Trooper Saenz thought it was odd for a mechanic to be traveling during the middle of a work week.  Furthermore, Defendant was not dressed as a typical mechanic and did not have any tools or equipment in his vehicle.  Defendant told Trooper Saenz that he had not been drinking, was not tired, and the steering on his truck was functioning properly.  Trooper Saenz subsequently patted down Defendant but found no weapons.  Defendant avoided eye contact and was nervous throughout the initial interview.

At approximately 3:02 p.m., Trooper Saenz went back to his patrol vehicle and initiated a computer check on Defendant's driver's license.  Trooper Saenz returned to Defendant and asked if he was carrying anything illegal in the vehicle. Defendant said "no," and Trooper Saenz subsequently asked Defendant for his consent to conduct a thorough search of his vehicle.  Defendant consented to the search at 3:05 p.m.  While he was waiting for the results of the computer check, Trooper Saenz began searching Defendant's vehicle.  Meanwhile, Sgt. Saenz began questioning Defendant about the details of his trip.  Defendant was unable to provide the address and phone number for his children.

At approximately 3:07 p.m., the computer check results came back, which revealed there were no wants or warrants for Defendant or his vehicle. At this point, Trooper Saenz and Sgt. Saenz continued to search the vehicle.  They found a black bag that contained one change of clothing, a toothbrush and deodorant.  At 3:09 p.m., Trooper Saenz opened the hood of the truck and saw wooden, non-factory screws in the firewall.  He testified this indicated that somebody had tampered with the vehicle.

Trooper Saenz requested a K-9 search at 3:21 p.m. The K-9 arrived approximately ten minutes later and alerted to the left side of the dashboard. Defendant subsequently agreed to follow Trooper Saenz to the Highway Patrol office in Kingsville for further inspection of the vehicle. Upon arrival and further search of Defendant's vehicle, Sgt. Saenz found three bundles of cocaine and arrested Defendant at 4:15 p.m.

## II.   Analysis

The issue before the Court is whether Defendant was unlawfully detained in violation of the Fourth Amendment. In reaching a determination on the issue, the Court must decide (1) whether the traffic stop was legal under *Terry v. Ohio*; and (2) whether Defendant gave valid consent to search.

The Fourth Amendment prohibits unreasonable searches and seizures. *United States v. Shabazz*, 993 F.2d 431, 434 (5th Cir. 1993). A routine traffic stop is a "seizure" within the meaning of the Fourth Amendment. *United States v. Valdez*, 267 F.3d 35, 397 (5th Cir. 2001). Courts analyze the legality of a traffic stop under the framework established in *Terry v. Ohio,* 392 U.S. 19 (1968). According thereto, courts must answer two questions: (1) was the initial stop justified at its inception, and (2) was the intrusion reasonably related in scope to the circumstances that justified the interference in the first place. *United States v. Lopez-Moreno*, 420 F.3d 420 (5th Cir. 2005) (citing *Terry v. Ohio,* 392 U.S. 19 (1968)).

In order to properly evaluate the second prong of *Terry*, the court must make the following fact determinations: (1) when did the justification for the initial stop end; and (2)

3

did the government have reasonable suspicion of criminal activity before that time. *United States v. Brigham*, 382 F.3d 500, 507 (5th Cir. 2004)(en banc). This means the detention must end once the justification for the initial stop has ended. *Id*.

In a valid traffic stop, an officer can request a driver's license, insurance papers, run a computer check, and issue a citation. *United States v. Shabazz*, 993 F.2d 431, 437 (5th Cir. 1993). Detention beyond the time required to complete those tasks is an illegal seizure under the Fourth Amendment unless the officer has a reasonable suspicion supported by articulable facts that a crime has been committed. *United States v. Santiago*, 310 F.3d 336, 342 (5th Cir. 2002).

In this case, Defendant does not challenge the legitimacy of the initial traffic stop. Rather, Defendant's argument focuses on the second prong of *Terry*. Specifically, Defendant argues he was unlawfully detained after the computer check results came back clean because (1) the justification for the initial traffic stop had ended; and (2) the officers did not have reasonable suspicion of criminal activity.

Here, Trooper Saenz asked Defendant to exit the vehicle and produce his driver's license and insurance papers. He then initiated a valid computer check on Defendant's license. While Trooper Saenz was waiting for the results, Defendant voluntarily gave consent to a thorough search of his truck. Defendant admits that he gave consent to search his vehicle, and he has made no argument to the Court that his consent was not voluntary or that Trooper Saenz exceeded the scope of the consent given. Moreover, there is no evidence that Defendant placed any limitations on his consent, and there is nothing to suggest his

4

consent was in any way predicated on the outcome of the records check.

The Court agrees that the justification for initial traffic stop ended when the computer check came back clean. Furthermore, the Court makes the following findings: (1) Trooper Saenz developed reasonable suspicion that contraband was hidden in Defendant's vehicle when he opened the hood of the truck and saw non-factory screws in the firewall; and (2) Trooper Saenz had probable cause to search the vehicle when the K-9 alerted to the left side of the dashboard.

Nevertheless, the Court's ruling on this motion does not hinge on the Court making a finding as to whether Trooper Saenz had reasonable suspicion of criminal activity to justify Defendant's continued detention. In this case, Defendant voluntarily gave consent to search during a valid traffic stop and while the officers were awaiting the results of the computer check. Therefore, the Court finds that Defendant gave consent before the justification for the initial stop ended. The Court further finds that Defendant's consent was not limited and justified searching wherever drugs might be concealed. *Untied States v. Torrellas*, 2006 WL 2505425 (5th Cir. 2006) (citing *Florida v. Jimeno*, 500 U.S. 248, 251 (1991)). Accordingly, the Court finds the subsequent detention of Defendant was justified by Defendant's consent and therefore lawful.

5

Based on the foregoing, the Court finds that no Fourth Amendment violation occurred. Defendant's Motion to Suppress is DENIED.

ORDERED November 29, 2006.

_____
HAYDEN HEAD
CHIEF JUDGE